The next case before us this morning is 24-3127 Auto-Owners v. Excelsior Westbrook May it please the court, I am Mike Risley here on behalf of the appellant Excelsior Westbrook. The District Court erred when it held that the auto-owners policy issued to my client did not provide coverage for a substantial water damage loss incurred at a property located in Lenexa, Kansas. The District Court specifically held that the insurer in this case, auto-owners, satisfied its burden of establishing the application of the policy's water exclusion on the facts of the loss that was incurred here. The case turns on application of the reasonable expectations doctrine under which an insured, in my client's position, is entitled to all of the coverage that it can reasonably expect based on the facts of the, based on the language of the policy and the facts of the case. But don't we only reach that doctrine if we find ambiguity in the policy? Well that's correct, your honor. If the policy is unambiguous, there is no need to interpret the policy, if you will. We believe that the court erred in finding that it was unambiguous because there are differing ways to interpret the phrase, water under the ground surface, which is the key language in the policy. In which portion of the policy? I thought you acknowledged that the water exclusion applies here. No, absolutely not. And why not? Why isn't this covered by the water exclusion? Because the water exclusion, well first of all, it says, the grant of coverage in the policy says that the insurer will pay damages caused by resulting from any covered cause of loss. Well it also has an exclusion for underground pipes, right? It says we don't cover underground pipes. Right. Damage to the pipe itself would not be covered. Okay. But we're not dealing with the pipe itself, we're dealing with the substantial water damage to the property that occurred on the first floor of the property. And just tell me, the damage occurred to the first floor because it seeped up and seeped in? It went from the pipe. Which was a few feet under the floor. A few feet under the floor. Not under the ground, but under the floor, which is a significant difference in terms of interpreting the policy. Okay. Well, I would consider it this way. The earth is round, but when you dig a hole, it's not perfectly round anymore. When this building was built, there was a big hole dealt which changed the surface of the ground. And the spike was put in, there was fill material put in, and then a floor was put in, but it did not revert to a perfectly round orb, if you will, because the surface of the ground was substantially changed when this building was built. So your argument is that it has to be below the foundation to be under the ground? We believe that it is a reasonable interpretation of the language that under the ground surface would be under the foundation of the building. But why doesn't the Kansas Supreme Court case in Krug versus Mutual Millers Insurance Company from 1972 settle this question? Well, a couple of reasons. One, there was no dispute that the water break occurred under the surface of the ground. The break was not under the building itself, but was adjacent to the building. And then water traveled across and caused the damage. So there was no question, no dispute that the pipe was under the ground surface where it broke. In addition, the policy in the Krug case did not have the we will pay provision relating to water escaping a system containing water on the system, which is one of the arguments as to why the insurer would have a reasonable expectation of coverage in this case. Because there's the general program of coverage. It says we'll cover causes of loss. It says we'll cover direct risks of physical damage, which is italicized, which should mean it's a defined term. That defined term is nowhere. But the causes of loss special form has a definition of water damage that includes the type of water damage done here. But you only get there if you're under the rust, the wear and tear, the rust exclusion, right? It's an exception to an exclusion. No. Respectfully, I'm sorry. Respectfully, I disagree with that analysis. There is the exclusion for rust and wear. But then it says, it does not say, however, this exclusion does not apply if blah, blah, blah. It says something very different. It says, however, we will pay. But if you look at it, you're under D, wear and tear, which is an exclusion. And then it says, however, we will cover if related back to 2D1-7, which is specifically wear and tear, and says, what, they will cover a specified cause of loss, which includes water damage, right? Obviously, you've quoted the policy correctly. Okay. So to me, I look at that and it's pretty clear that that however paragraph relates only to wear and tear. Well that would be one interpretation, of course. Well, how do you interpret it anywhere else when it specifically says, with respect to 2D1-7? Well, let's look at it from the perspective of an insured. Not from a judge, not from an insurance lawyer. Well, even the perspective of an insured, it's an insured that can read. Yes. Okay. And understands when it says, we're referring to 2D1-7, and it's indented under D, wear and tear, that we have to assume that your insured has read the policy. Yes. And in fact, the insured testified that he did not believe that the exclusion applied, and that there was coverage. That's not relevant, is it? No, it is. It's unreasonable. It is relevant to this extent. It is an interpretation of the policy. It is not controlling, but if it's a reasonable interpretation of the policy, I mean, I could say, instead of the insured testified this, it could be argued that blah, blah, blah. It's an interpretation of the policy. The question is whether that is a reasonable interpretation based on the facts of the case. And I go back to the policy language. And the policy language, of course. At the very beginning of the building and personal property coverage form, it says, read the entire policy carefully to determine rights, duties, and what is not covered. So the insured is instructed to read the entire policy. When the policy reads, I'm sorry, when the insured reads the entire policy, and it reads language that says, we will pay for the loss or damage caused by that specific cause or loss or building class breakage. It doesn't know that it's an exception to an exclusion. It is reading a grant of coverage. It is reading an agreement, a promise by the insurance company that it will pay for a loss that comes within the specific cause of loss. Well, but it also says, if an excluded cause of loss, that is listed in 2D1 through 7, which is wear and tear. That is correct. That is correct. And so you're trying to use this to modify another section of the policy. I would push back on trying to modify another section of the policy. I'm trying to understand how a reasonable insured would interpret the policy reading the entire policy, which includes the initial grant of coverage, the exclusions, and this language that talks about an agreement to pay for the loss or damage caused by the specific cause. If we were to conclude that the water exclusion, that the district court was correct, that the water exclusion applies here, and also that you might have an argument about wear and tear, does the anti-concurrent causes clause resolve any conflict there? We believe that it would not resolve it in that it speaks in terms of concurrent causes, not whether there's more than one exclusion or not. And specifically it says, we will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence of the loss. It speaks in terms of causes or events, not provisions of the policy or whether there's more than one potential exclusion. And there's only one cause of this loss, the pipe burst and the water damage that was caused to the building. So we believe that the anti-concurrent cause provision does not apply and would not prevent the existence of coverage. Counsel, can I get back to your distinction of Krug? You said that in Krug it wasn't disputed that the water was below the surface of the ground because that rupture from the water main and then the pipe coming to the house was 15 feet outside of the northwest wall of the home. Correct. But here you say that this pipe, as we can see in the pictures, I think the words used in the brief were that it was within the footprint of the building. Correct. As I read the briefs, there seem to be courts across the country interpreting language, very similar language to this policy, but I may have missed it. But are there any cases that talk about this specific distinction about the footprint of the building making any difference? Well, I think it relates to the definition of water damage that's contained in the specific causes of loss because it speaks in terms of water damage means accidental discharge or leakage of water or steam as the director is often breaking apart of a system on the described premises. So that's why it's important that it's on the described premises. Well, and if that description you just read only applies to wear and tear and we're interpreting the separate exclusion as to water damage, why would that be relevant? Well, because we are asking the court, as I think the policy, as the case law would suggest, to read the policy as a whole and as the insurer is instructed to do. And it's not whether the insurer can provide a reasonable or a plausible definition. The question is whether the policy can be interpreted as a whole consistent with a reasonable expectation of coverage. And we believe that it does in this case. I would reserve the rest of my time. All right. May I proceed? Good morning. You may please the court. My name is Aaron Freeman and I represent Auto Owners Insurance Company. This case presents a straightforward application of an unambiguous water exclusion. Now, the material facts of this case are not in dispute. On or about July 21st, 2022, an underground water pipe broke below a commercial property owned by Excelsior Westbrook. Well, I think there's a dispute on the very, was it underground? Isn't that the argument we've just heard, that it was within the footprint of the building and therefore it's not underground? That is Excelsior's argument. But even if you take the facts that they contend shows it's above ground, that it's in the aggregate of the building, that's in the footprint, and that's connected to the building, none of these facts change the fact that the pipe itself is underground. And we see that just as a result of what they had to do to access the pipe itself. They had to break up the concrete floor. They had to dig out dirt, rock, and clay just to access it. Bob Cork, the plumber who repaired the pipe, testified that he had to dig down seven feet just to access the pipe. All the witnesses who observed the pipe agreed that it was underground. Now they point to Michelle White's testimony to argue that she never said it was underground. But if you look at the excerpt from the reply brief from her testimony, she agrees that they had to break up the floor and remove material to access the pipe. A reasonable inference from her testimony is that, yes, this was a pipe that was underground. Is there any definition of underground in the policy? No, there is not. And the exclusion itself doesn't use the word underground either.  Yes, it uses the phrase below the surface of the ground. And the courts that have addressed this exclusion, including the Kansas Supreme Court's decision in Crude, have uniformly held that underground pipes that break and the water that escapes from it is water that's under the surface of the ground. And to Judge Federico's question about whether Krug sells this issue, I believe that it does. Even in that exclusion there, that exclusion didn't have the clarifying language that we have in this exclusion stating that it applies to natural causes and all other, well, I'll paraphrase it a little bit, and other causes besides just natural ones. And so Krug reached its decision finding that the exclusion applied even absent that clarifying language. Now a lot of the cases that Excelsior Westbrook has relied on here to argue that the exclusion is ambiguous don't have that clarifying language. And indeed those cases also don't draw upon the distinction that they asked the court to make here. Those cases addressed whether the policy was ambiguous as applied to man-made sources of water versus natural sources of water. And that's not the issue in this case. Instead their argument only addresses whether the policy is ambiguous as applied to the pipe here because the break itself was under the building. Yeah, but why wouldn't every reasonable insured believe this was covered? I mean, if we were to just take a poll and say there's a water pipe that's connected to the building that is part of the fire suppression system that's going to rupture and flood the building, wouldn't every reasonable insured say, of course that's going to be covered? To Judge Federico's question earlier, we don't get to the reasonable expectations doctrine until the court finds that there is an ambiguity in the policy itself. And my second response to that question is, just because an insured may expect something to be covered under a policy, that doesn't decide the issue. It's an objective test based on what a reasonably pruned insured would believe. And now, colloquially, people may believe that their policy covers things that may not actually be covered. So, for example, your audit policy may not cover a reasonably pruned insured. Your homeowner's policy may not cover flooding. So unless we find ambiguity in the policy, we don't even get to this doctrine. But let me ask you about the question about once you essentially change the earth to build a building. And I'm going to guess you're not going to dispute that the earth is round, but you may dispute that once you start to build the foundation of a building, including the pipes and all that, you've essentially changed what it means to be underground, even if there's dirt or soil, because the building itself encompasses what they call the footprint of the building, encompasses things that are under what used to be the surface of the ground. Now, I don't know which of you is right, but doesn't the fact that I say, well, that sounds kind of reasonable, mean that this policy is ambiguous? I would disagree, Your Honor. So essentially what their argument is, is the same argument they made to the district court, that a pipe can't be under the ground surface if the earth is disturbed above it. Now, so essentially what they're asking is, well, let's take an example of the pipe in Corporate Lakes, for example. The pipe in that case was essentially the same pipe that broke here. It was a water main pipe that connected the building's fire suppression system. However, the break in that pipe occurred away, not underneath the building, but away from the building a ways. Now, under their interpretation, that pipe would still not be underground, because at some point, someone had to dig up the earth to place that pipe in it. However, when it gets filled back in, well, there's your new upper boundary of the earth. And that's the same thing we have here. It just happens to be there's a building on top of it. But isn't that the difference? I mean, that's what I'm getting at, which is, you know, Krug tells us, and I think it would foreclose that example you just gave, because again, in Krug the rupture happened 15 feet outside of the structure of the building. But what I just heard argued by Excelsior is, well, but once you start digging foundations into the building, you've now disrupted what used to be the ground surface. And so even if you're using dirt and, you know, pea gravel to fill it in, whatever that may be, you've sort of redefined what it means to surface the earth. And again, I don't know which of you is right, but I'm looking to see, well, what does the legal authority tell us about which of you is right? And in the absence of that, and I don't hear either party saying which one of you is right, I think, well, doesn't that mean it's ambiguous? So tell me why that's wrong. If we look at the case law, Your Honor, none of the cases draw a distinction between pipes buried under the home or breaks that occur away from the building. That's a distinction that's not drawn on the case law. And actually, if we were to look at the A Circus decision and Bull, that break did happen under the home, and the court still found that the under or the water under the surface of the ground exclusion applied. Now if I could turn to the anti-concurrent cause language. I would agree with the court's questions that it does apply where, or, sorry, let me back up. So the issue with it is not whether two or more exclusions apply to the loss. And this was an issue that was decided by the, or noted by the district court as well. It's whether a excluded cause of loss, in this case our water exclusion, combines with a potentially covered cause of loss, which under Excelsior's position here would be the exception to the wear and tear exclusion for specified causes of loss. When those combine, the excluded cause of loss means that the loss is still excluded, even if there's a potentially covered cause of loss. And Excelsior Westbrook hasn't offered any case law saying that a clause like this is ambiguous. And turning to their one cause of loss argument, this argument has similarly been made and rejected by courts, specifically the secure insurance case from the Wisconsin Appellate Court. They made almost an identical argument. In that case, an underground water pipe burst caused water to flow up into the building. Now, the insurer in that case similarly tried to argue that, well, there was only one cause of loss. There was a broken pipe. But the secure court observed in that case that, well, that's not entirely true. Because if the pipe had just broke and the water formed around it but never entered the building, there would be no other potentially covered loss there. There would be no other damage to the building. You only get that damage by the water seeping or pushing through the walls or foundations of the building. And the only other case they cite on that point is the Katrina case from the Fifth Circuit. However, the issue in that case was whether a flood exclusion barred coverage. And the court held that that was the only issue. There were no other potentially covered causes of loss or excluded causes of loss. There was only the flooding. In fact, the court in that case explicitly warned about insurers trying to recharacterize their losses to avoid the application of exclusions. So I posit that Katrina simply has no application to this case here. But in order for you to have the advantage of the concurrent loss provision to deal with the wear and tear exception to the exclusion, we have to agree that this pipe was below the surface. Right? That's correct, Your Honor. And you know, it doesn't really say surface of what. I believe it says under the ground surface. Well, it says water under the ground surface pressing on or flowing or seeping through. Yeah. And so the question becomes, this pipe broke. So if you had a pipe in the basement, right? So you've dug out the ground. So you're technically below the ground surface, but you're in somebody's basement, not below the basement floor. Does this cover it? I understand, Your Honor. If I'm taking your hypothetical correctly here, then that pipe would be above ground and this exclusion couldn't apply. So another hypothetical. So that would be above ground even though it is technically below the ground because you dug down and put in a basement. So I want to make sure I understand the hypothetical correctly. Hypothetical is I have a house. Right. And the ground level is the main floor and then they have put in a basement by excavating and put in foundation, cement, and I have a basement and I've got a pipe that's in my basement above the floor. Is it above or below the ground? I understand, Your Honor. That would be above ground. And we can see an example of this in the case that Excelsior Westbrook cites, which is the Hudson case from New York. In that case, like Your Honor's hypothetical, that pipe entered into the building through the foundation and was in a gravel material above ground but also below a concrete slab. Now, there's still other issues with that case, for example. It doesn't have our clarifying language here, caused by a natural act or other causes. But to Your Honor's hypothetical, I think that's what we would be. We would be looking at a situation like that, where we have a pipe that is expressly above ground and within the home itself. Where do you, in the water exclusion, how do you, is there anything that clearly tells me that? Well, if we look at the examples of where the water has to pass through, it has to pass through a paved surface, whether it be a wall or floor, that is your boundary there in that case. And in your example, that pipe would already be in the home above the concrete floor of the basement. It floods the basement and goes all the way up and goes into the main level. I think at that point, Your Honor, I think the exclusion still wouldn't apply because the water wasn't originating under the ground in that example. Well, and that's the question, isn't it? That is the question, Your Honor. Are you underground when you're in the basement? Oh, I, well, I would still say no in that case because at that point the pipe is already in the building. So what the district court looked at was what is the upper boundary of the earth in that case? So to Your Honor's hypothetical, if you dig down, the boundary of earth is where the basement ends and the ground begins. And that's in line with the surfaces and the, so that would be in line with the foundation, the floor, and the walls of a basement where the water would have to push or seep through. If there's no further questions, I will yield the rest of my time. Thank you. May it please the Court? The policy does not contain a definition of underground. In fact, it doesn't even use the phrase underground. The phrase is under the ground surface. And that is the task of trying to make sense of that. Now, of course, the insurer could have provided a definition for that which would clarify things, but it chose not to, which it had the right to, but it has to live with the consequences of not making the provision unambiguous because it is ambiguous. And as the questions have suggested, you know, maybe if you're just sitting around, could it mean this? Well, it could mean that it's, you know, where it used to be. It used to be this round ball, but there was a hole. But let's consider, you know, there's this film material. It's not really the earth as it used to be, but it's film material. But maybe that should be considered underground. Or the interpretation, which I think was the reasonable interpretation, that under the ground surface now exists. It changed when this building was built. It's not a round ball in terms of where this occurs. Does it matter they had to dig down seven feet to get to the pipe? They had to break through the floor and dig down seven feet. Well, I think there's a small factual issue as to whether it was seven feet. Okay, let's say three feet. Four feet, three feet. No, no, because it's, the hole was dug, there was film material in that area. Not the earth as it used to exist, but film material, which was gravel and all. And so it is not considered the ground at that point. I will add, if I may briefly, the case that is really on point that we believe is, it's not controlling because it's not a Kansas case, but the Hudson versus Allstate Insurance Company case from the New York Supreme Court, which says, the exclusion said, water below the surface regardless of its source. So the distinction that the insurer wants to make with regard to the case really doesn't apply. It's the exact same situation presented here. Thank you. Thank you.